U.S. v. Roberto Mejill-Tellado, 21-82(ADC)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | CRIMINAL NO. 21-82(ADC) |
| v. | |
| Roberto Mejill-Tellado, Defendant. | |



### PLEA AGREEMENT



**TO THE HONORABLE COURT:**

The United States of America, Defendant, Roberto Mejill-Tellado, and Defendant's counsel, Maria A. Dominguez-Victoriano, Esq. and Carlos J. Andreu-Collazo, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Counts One (1) and Thirty-Three (33) of the Indictment:

Count One:   From at least in or around March 2016 up to and including 2018, in the District of Puerto Rico and elsewhere, defendants [1] EUGENIO GARCIA JIMENEZ; [2] STEPHEN KIRKLAND aka Steve; [3] STEVE MINGER; [4] ALEJANDRO RIERA FERNANDEZ; [5] JOSEPH KIRKLAND; [6] ARNALDO J. IRIZARRY IRIZARRY; and [7] ROBERTO MEJILL TELLADO, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

It was a part and object of the conspiracy that defendants [1] EUGENIO GARCIA

JIMENEZ; [2] STEPHEN KIRKLAND; [3] STEVE MINGER; [4] ALEJANDRO RIERA FERNANDEZ; [5] JOSEPH KIRKLAND; [6] ARNALDO J. IRIZARRY IRIZARRY; and [7] ROBERTO MEJILL TELLADO, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, defendants [1] EUGENIO GARCIA JIMENEZ; [2] STEPHEN KIRKLAND; [3] STEVE MINGER; [4] ALEJANDRO RIERA FERNANDEZ; [5] JOSEPH KIRKLAND; [6] ARNALDO J. IRIZARRY IRIZARRY; and [7] ROBERTO MEJILL TELLADO, and others known and unknown, agreed to make and caused to be made materially false statements to Mayaguez and MEDI, through electronic messages, asserting that the $9,000,000.00 in principal was invested at a high rate of return and caused financial transactions that depleted Mayaguez's $9,000,000.00 and converted funds to the defendants' own personal use. All in violation of Title 18, United States Code, Section 1349.

Count Thirty-Three: On or about April 7, 2017, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendants, did knowingly engage and attempt to engage in the following monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of U.S. currency, funds, and monetary instruments, that is Check No. 2014 to the order of Cash for $80,000.00 issued from [7] ROBERTO MEJILL TELLADO's Home Banc Account ending in 9834, such property

having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud. All in violation of Title 18, United States Code, Section 1957.

## 2. Maximum Penalties

<u>Count One</u>: The maximum statutory penalty for the offense charged in Count One of the Indictment, is a term of imprisonment of not more than twenty (20) years pursuant to 18 U.S.C. §§ 1349 and 1343; a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3); and a supervised release term of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1).

<u>Count Thirty-Three</u>: The maximum statutory penalty for the offense charged in Count Thirty-Three of the Indictment, is a term of imprisonment of not more than ten (10) years pursuant to 18 U.S.C. § 1957(b)(1); a fine not to exceed two hundred and fifty thousand dollars pursuant to 18 U.S.C. § 3571(b)(3) or an alternate fine of not more than twice the amount of the criminally derived property involved in the transaction pursuant to 18 U.S.C. § 1957(b)(1) and (2), and a supervised release term of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

## 3. Sentencing Guidelines Applicability

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. §§ 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

4. **Special Monetary Assessment**

   Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

5. **Fines and Restitution**

   The Court may, pursuant to Section 5E1.2 of the Guidelines order Defendant to pay a fine. The Court may also impose restitution. In this case, defendant agrees that the amount of restitution will be no less than $680,000.00. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500). The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996.

6. **Sentence to be Determined by the Court**

   Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

7. **Recommended Sentencing Guidelines Calculations**

   After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant. However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

U.S. v. Roberto Mejill-Tellado, 21-82(ADC)

| SENTENCING GUIDELINES CALCULATIONS COUNT ONE 18 U.S.C. § 1349 |||
|---|---|---|
| **Count One** | **Conspiracy to Commit Wire Fraud** | |
| **U.S.S.G Section** | **Description** | **Levels** |
| 2X1.1(a) - reference to 2B1.1(a)(1) | Base Offense Level | 7 |
| 2X1.1(a) – reference to 2B1.1(b)(1)(H) | Loss amount: more than $550,000.00 | +14 |
| 2X1.1(a) - reference to 2B1.1(b)(2)(A)(iii) | Offense resulted in substantial financial hardship to 2 victims | +2 |
| 2X1.1(a) - reference to 2B1.1(b)(10) | The offense otherwise involved sophisticated means | +2 |
| | Total Offense Level | 25 |

| SENTENCING GUIDELINES CALCULATIONS COUNT THIRTY-THREE 18 U.S.C. § 1957 |||
|---|---|---|
| **Count Thirty-Three** | **Money Laundering** | |
| **U.S.S.G Section** | **Description** | **Levels** |
| 2S1.1(a)(1) | Base Offense Level | 6 |
| 2S1.1(a)(1) – reference to 2B1.1(b)(1)(G) | Loss amount: more than $40,000.00 – (Check 2014 for $80,000.00) | +6 |
| 2S1.1(b)(2)(A) | Defendant was convicted under 18 U.S.C. § 1957 | +1 |
| | Total Offense Level | 13 |

| U.S.S.G Section | Description | Levels |
|---|---|---|
| | **Multiple Counts** | |
| 3D1.1(a)(1) | Counts grouped as follows: Group 1 is Count 1 (18 U.S.C. § 1349). Group 2 is Count 33 (18 U.S.C. § 1957). | |
| 3D1.1(a)(2) & 3D1.3 | Offense levels applicable for each group: Group 1: 25; Group 2: 13. Highest offense level: 25 | |
| 3D1.1(a)(3) | Total units: 1 unit, increase of 1. Breakdown: Group 1: 1 unit; Group 2: 0 units | +25 |
| § 3E1.1(a) and (b) | Defendant clearly demonstrates timely acceptance of responsibility for his offense | -3 |
| | **Total Adjusted Offense Level** | 22 |

| CH Cat. I | CH Cat. II | CH Cat. III | CH Cat. IV | CH Cat. V | CH Cat. VI |
|---|---|---|---|---|---|
| 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |

### 8. Sentence Recommendation

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree that the parties will request a sentence of imprisonment at the lower end of the applicable Guidelines range at a total offense level of 22 when combined with the criminal history category determined by the Court.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement.

### 9. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant.

### 10. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is within or below the Guidelines range for the total offense level calculated in this Plea Agreement when combined with Defendant's criminal history category as determined by the Court, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 11. No Further Adjustments or Departures

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material

breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

## 12. Satisfaction with Counsel

Defendant is satisfied with counsel, Maria A. Dominguez-Victoriano, Esq., and Carlos J. Andreu-Collazo, Esq., asserts that counsel has rendered effective legal assistance.

## 13. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

### 14. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 15. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

### 16. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 17. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 18. Dismissal of Remaining Counts

At sentencing should there be any pending counts and should the Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss the remaining counts of the Indictment pending against Defendant in this case.

### 19. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

### 20. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

### 21. Potential Impact on Immigration Status

Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), Defendant hereby agrees and recognizes that if convicted, a Defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 22. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public

office, and to lawfully possess a firearm.

W. Stephen Muldrow
United States Attorney

_____
Myriam Y. Fernandez-Gonzalez
Assistant U.S. Attorney
Chief, Asset Recovery and Money
Laundering
Dated: 6.13.2022

_____
Maria A. Dominguez-Victoriano, Esq.
DMRA Law LLC
Counsel for Defendant
Dated: 06/06/22

_____
Carlos J. Andreu-Collazo, Esq.
DMRA Law LLC
Counsel for Defendant
Dated: 05/06/22

_____
Roberto Mejill-Tellado
Defendant
Dated: 5/10/22

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 5/10/22

Roberto Mejill-Tellado
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Carlos J. Andreu-Collazo, Esq.
Counsel for Defendant
Dated: 06/06/22

Maria A. Dominguez-Victoriano, Esq.
Counsel for Defendant
Dated: 06/06/22

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, defendant Roberto Mejill-Tellado admits that Defendant is guilty as charged in the Indictment and admits the following:

From on or about March 2016 to on about June 2018, defendants orchestrated a scheme to defraud the Municipality of Mayaguez (hereinafter "Mayaguez") and Mayaguez Economic Development, Inc. (hereinafter "MEDI") of monies belonging to Mayaguez, by falsely representing that the totality of $9,000,000.00 in principal belonging to Mayaguez and entrusted to MEDI for investment was in fact invested and yielding a significant rate of return. All the while these material false representations were made to Mayaguez and MEDI, defendants transferred, distributed, and spent the money in ways inconsistent with the representations made to Mayaguez and MEDI about the investment of the money. Using multiple shell corporate entities and financial accounts, defendants collectively received hundreds of thousands of dollars belonging to Mayaguez, intended for investment, which defendants then used for personal expenses and purchases of personal and real property. The use of shell corporate entities further served to conceal the scheme to defraud Mayaguez and MEDI and allow defendants to lull Mayaguez and MEDI into believing that the $9,000,000.00 was invested as falsely represented by defendants. Of the $9,000,000 obtained from Mayaguez through material misrepresentations, the defendants only returned $1,800,000 to Mayaguez and in doing so, falsely represented that the $1,800,000.00 was a return on investment.

The evidence would have specifically proven that Mayaguez, through its municipal legislature, authorized the creation of MEDI as a for-profit public corporation, legally independent from the Municipal Government of Mayaguez. MEDI was registered on April

11, 2014, with the Puerto Rico State Department as a domestic for-profit municipal business with a purpose of conducting any licit business permitted by the law in Puerto Rico. MEDI's Board of Directors included five members: the Mayor of Mayaguez as president of the board, the Mayaguez Finance Director, and three other municipal employees named and designated by the Mayor. MEDI's stated objectives were to promote the economic development of Mayaguez and the western region of Puerto Rico, create jobs, be involved in infrastructure projects, and improve the quality of life of the citizens, among others. The Municipal Legislature authorized Mayaguez to transfer its properties and assets as needed to make this possible.



From on or about August 2014 and up and until January 2016, Mayaguez was assigned millions of dollars for renovations and improvements to the Mayaguez Trauma Center through a series of joint resolutions from the Puerto Rico Legislature. Of the money assigned, Mayaguez received approximately $8,761,839.00. That money, deposited into a bank account of Mayaguez, was the bulk of $9,000,000.00 transferred to MEDI for investment, as represented to Mayaguez and MEDI by defendant [1] EUGENIO GARCIA JIMENEZ, who was an advisor to Mayaguez and MEDI. The evidence would have shown that defendant [2] STEPHEN KIRKLAND was the signer as President on a bank account belonging to M.A.G. Holdings Inc. (hereinafter "MAG"); that defendant [3] STEVE MINGER opened multiple bank accounts which then received money from the $9,000,000.00 belonging to Mayaguez and allowed defendants to transfer, distribute and spend the money in ways inconsistent with the representations made to Mayaguez and MEDI about the investment of the money; that defendant [4] ALEJANDRO RIERA FERNÁNDEZ was MEDI's Executive Director; that defendant [5] JOSEPH KIRKLAND was a financial advisor at Union Banc Investment Services (UBIS); that defendant [6] ARNALDO J. IRIZARRY IRIZARRY was a contractor

providing legal representation to Mayaguez; and that defendant [7] ROBERTO MEJILL TELLADO was a contractor providing consulting and financial services to Mayaguez.

The evidence at trial would further prove that the scheme to defraud was executed through the use of existing corporate entities, as well as incorporating and causing the incorporation of new corporate entities to be used, including but not limited to: Mayaguez Economic Development - Financial Strategies Inc. (MEDFS); M.A.G. Holdings Inc.; Tega Holdings LLC; MEDI Management, Inc.; MEDI Films; MEDICIDREX; MEDISNIF; U.A.- United Advisors Corporation; Imanagement LLC; Eugenio Garcia Jr. & Associates LLC; Leyton Suisse Mayaguez Corp.; MAG Film Studios, LLC; Premier Investment and Financial Services Group LLC. The scheme to defraud was executed by using existing corporate and personal bank accounts, as well as opening new corporate and personal banks accounts, that would allow for the $9,000,000.00 to be transferred, distributed, and spent by defendants in ways inconsistent with the representations made to Mayaguez and MEDI. Relevant bank accounts included but were not limited to, accounts in Union Banc Investment Services; LPL Financial; Banco Popular de Puerto Rico (BPPR); Wells Fargo, Banco Santander, Home Banc, N.A, and Bank of America.

The evidence would have shown that the manner and means of the scheme to defraud included: that Defendant [1] EUGENIO GARCIA JIMENEZ caused the transfer of the $9,000,000.00 in ways inconsistent with the representation to Mayaguez; that immediately upon opening the UBIS account, on March 31, 2016, MEDI's investment account was converted into a margin account, using the entire portfolio as collateral against future loans and purchased $8,999,276.72 in various US Treasury Securities, earning a blended interest rate of approximately 2%; that from April 1, 2016 through April 20, 2016, $4.1 million were transferred out of the UBIS account in five (5) wire transfers, despite representations to UBIS

that the account would be funded by an initial investment of nine-million dollars, with zero to five transactions expected per year; that on June 9, 2016, MEDI's entire investment portfolio was transferred to LPL Financial in full, including the margin debt of $4.1 million, its accrued interest, and the investments in various US Treasury Securities, to MEDFS' LPL Financial Account ending in 1083; that from June 21, 2016 through July 6, 2016, $3,150,000.00, via margin borrowing power, were transferred out of MEDFS' LPL Financial Account ending in 1083; and that on September 23, 2016, MEDFS account at LPL Financial was liquidated and after paying off the margin loan debt and the associated interest at LPL Financial, there was a total of $1,764,808.54, sent to MEDFS' Wells Fargo Account ending in 3735 via check.

The evidence would show that the monies transferred out of UBIS Account ending in 2567 and LPL Financial Account ending in 1083 were transferred into MEDFS' Wells Fargo Account ending in 3735; TEGA's Wells Fargo Account ending in 6938; MAG's Wells Fargo Account 6920; and MAG's BPPR Account ending in 8221. From these four accounts, the monies were transferred into and out of no less than twenty different bank accounts from which the monies were then distributed and used by defendants in ways inconsistent with the false representation to MEDI and Mayaguez that the $9,000,000.00 was invested at a high rate of return.

The four accounts above described were all used to transfer monies from the $9,000,000.00 belonging to Mayaguez in ways that depleted the funds. In addition, MEDFS' Wells Fargo Account ending in 3735 was used to lull Mayaguez and MEDI into believing that the $9,000,000.00 was still invested and generating interest, through a transfer of $1,800,000.00 on June 24, 2016, to Mayaguez's Banco Santander Account ending in 7266, which was represented as return on investment, when it was in fact a partial return of Mayaguez's own principal of $9,000,000.00. From on or about September 28, 2016, to April 2018, defendant

[1] Eugenio Garcia Jimenez represented to Mayaguez that the $9,000,000.00 was invested when it was not; that the investment obtained an 18% interest on it, and that the $9,000,000.00 remained intact ready to be reinvested and to generate interests.

The evidence would prove that money from the $9,000,000.00, after being transferred through multiple accounts, was spent by defendants on consumer goods and services, including but not limited to a marine vessel, jewelry, clothing, school tuition, restaurants, utilities, credit card payments, and home decor, as well as real estate improvements (pools, for example) and the payment of home mortgages.

Consequently, the evidence would show that from at least in or around March 2016 up to and including 2018, in the District of Puerto Rico and elsewhere, defendants [1] EUGENIO GARCIA JIMENEZ; [2] STEPHEN KIRKLAND aka Steve; [3] STEVE MINGER; [4] ALEJANDRO RIERA FERNANDEZ; [5] JOSEPH KIRKLAND; [6] ARNALDO J. IRIZARRY IRIZARRY; and [7] ROBERTO MEJILL TELLADO, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343. It was a part and object of the conspiracy that defendants [1] Eugenio Garcia Jimenez; [2] Stephen Kirkland; [3] Steve Minger; [4] Alejandro Riera Fernandez; [5] Joseph Kirkland; [6] Arnaldo J. Irizarry Irizarry; and [7] Roberto Mejill Tellado, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit,

defendants [1] Eugenio Garcia Jimenez; [2] Stephen Kirkland; [3] Steve Minger; [4] Alejandro Riera Fernandez; [5] Joseph Kirkland; [6] Arnaldo J. Irizarry Irizarry; and [7] Roberto Mejill Tellado, and others known and unknown, agreed to make and caused to be made materially false statements to Mayaguez and MEDI, through electronic messages, asserting that the $9,000,000.00 in principal was invested at a high rate of return and caused financial transactions that depleted Mayaguez's $9,000,000.00 and converted funds to the defendants' own personal use. All in violations of Title 18, United States Code, Section 1349.

The evidence would further show that on or about April 7, 2017, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendants, did knowingly engage and attempt to engage in the following monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of U.S. currency, funds, and monetary instruments, that is Check No. 2014 to the order of Cash for $80,000.00 issued from [7] ROBERTO MEJILL TELLADO's Home Banc Account ending in 9834, such property having been derived from a specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud. All in violation of Title 18, United States Code, Sections 1957 and 2.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and documentary evidence, which would have proven beyond a reasonable doubt Defendant's guilt.

U.S. v. Roberto Mejill-Tellado, 21-82(ADC)

At trial, the United States would have proven beyond a reasonable doubt that defendant Roberto Mejill-Tellado is guilty as charged in Counts One and Thirty-Three of the Indictment. Discovery was timely made available to Defendant for review.

_____
Myriam Y. Fernández-Gonzalez
Assistant U.S. Attorney
Chief, Asset Recovery and Money Laundering
Dated: 6·13·2022

_____
Maria A. Dominguez-Victoriano, Esq.
DMRA Law LLC
Counsel for Defendant
Dated: 06/06/22

_____
Carlos J. Andreu-Collazo, Esq.
DMRA Law LLC
Counsel for Defendant
Dated: 06/06/22

_____
Roberto Mejill-Tellado
Defendant
Dated: 5/10/22